**PAN AMERICAN PETROLEUM CORPORATION et al., Appellants,**

**v.**

**TEXAS PACIFIC COAL AND OIL COMPANY et al., Appellees.**

**No. 5411.**

Court of Civil Appeals of Texas.

El Paso.

Nov. 2, 1960.

Rehearing Denied Nov. 30, 1960.

**550**

Storey, Armstrong & Steger and Robert M. Martin, Jr., Dallas, for appellants Sabine Royalty Corporation.

Brundidge, Fountain, Elliott & Bateman, Dallas, and Rutledge & Rutledge, Abilene, for appellants James O. Fox, Jr., et al.

Turner, Rodgers, Winn, Scurlock & Terry and Lon Sailers, Dallas, J. K. Smith, Fort Worth, and L. A. Thompson, Tulsa, Okl., of counsel, for appellants Pan American Petroleum Corporation et al.

Stubbeman, McRae, Sealy & Laughlin, Warren D. Barton, R. M. Thornton, Richard S. Brooks, Charles L. Klapproth, Durward M. Goolsby, Midland, Hudson, Keltner, Jordan & Cunningham, H. S. Livingstone, Fort Worth, Hassell & Hassell, Marvin J. Wise, Archie D. Kroney, William A. Rembert, Jr., J. Edwin Fleming, William F. Billings, Ernest S. Goens, Dallas, H. D. Stimson, Royce City, Carl Runge, Hardeman, Smith & Foy, San Angelo, Dan M. Welch, Oklahoma City, Okl., Neal Powers, Jr., Houston, and Smith & Smith, Tyler, for appellees.

LANGDON, Chief Justice.

Appellees, Texas Pacific Coal and Oil Company, Humble Oil & Refining Company, and Magnolia Refining Company, as plaintiffs in the trial court, brought this suit in the District Court of Upton County to determine the mineral ownership of certain lands in Upton County, Texas. Plaintiff-appellees alleged that some 80 or 85 parties claimed an interest in the minerals and that Pan American Petroleum Corporation claimed to own certain oil and gas leases on the land in question. The suit was in three counts, as follows:

(1) An interpleader suit as to the royalty estate;

(2) Suit for declaratory judgment as to both royalty and the leasehold estate;

(3) Suit to remove cloud from their title as to the leasehold estate.

Trial was had to the court without the intervention of a jury. Defendants Pan American Petroleum Company, and others, attacked the validity of four mineral deeds given by W. S. Hewes to R. H. Venable and N. R. Royall, Jr. The trial court held that the four mineral deeds were valid and enforceable, and were not void for uncertainty or want of sufficient description. Also involved was the construction of a deed from A. A. Reese and wife to W. B. Tucker and J. O. Fox, which the trial court construed as conveying ½₂nd of the minerals,

and by which the James O. Fox, Jr., et al., group of appellants contended they should receive a full ⅟₃₂nd of the total of production as a royalty.

The record in this case is voluminous, and the briefs filed herein are numerous. Having carefully considered all points raised by appellants, we are of the opinion that the decision in this case turns, first, upon a determination of the questions relating to the validity of the four mineral deeds from Hewes to Venable and Royall; and, secondly, on the question of whether the trial court correctly construed the deed from A. A. Reese, et ux., to Fox and Tucker.

In the brief filed by appellants Pan American Petroleum Corporation et al., it is contended by Points 1 to 4 of said brief that the trial court erred, as a matter of law, in failing to hold that each of the four purported mineral deeds in question, from W. S. Hewes, were void for uncertainty in the granting clause, and for want of sufficient description as to what interest was to be conveyed by the respective deeds out of the tract of land described.

The position of Sabine Royalty Corporation, another appellant, with respect to the four Hewes mineral deeds, is set out in a separate brief and is substantially the same as that taken by Pan American, et al., in their brief. Sabine Royalty contends that the trial court erred in holding the four purported mineral deeds are valid, and in holding that such deeds passed certain mineral interests from Hewes to Venable and Royall, the effect of such holding being to cause the mineral interest owned by appellant in such land to be diminished.

Since the points assigned by the appellants James O. Fox, Jr., et al., in still another brief, relate primarily to the question of whether the trial court correctly construed the deed from A. R. Reese, et ux., to Fox and Tucker, and are not directed at the trial court's holding concerning the validity of the four Hewes deeds, we will discuss, first, the points raised by appellants Sabine Royalty and Pan American, et al.,

before considering the questions raised by Fox and others in their briefs.

Since each of the four mineral deeds are in substantially the same form, except for the number of mineral acres purportedly conveyed by each, we believe only one need be reproduced here. For purposes of this opinion we have selected, and set out below, the second of the four mineral deeds from Hewes to Venable and Royall, this deed being dated December 1, 1948, and purporting to convey undivided mineral interests equal to 200 mineral acres in and under each of three separate and distinct tracts of lands in Upton County, Texas. It is as follows:

"State of Texas ⎤ Know All Men
County of Upton ⎦ By These Presents:

"That I, W. S. Hewes of Oklahoma County, Oklahoma, hereinafter called Grantor, for and in consideration of the sum of Ten Dollars ($10.00) to me, cash in hand paid by R. H. Venable and N. R. Royall, Jr., hereinafter called Grantees, receipt of which is hereby acknowledged, have granted, sold, conveyed, assigned and delivered, and by these presents do grant, sell, convey and deliver unto the said Grantees in the proportion of

three-fourths (¾ths) to R. H. Venable
one fourth (¼th) to N. R. Royall, Jr.,

Whose addresses are R. H. Venable, 25th Floor of the Mercantile Bank Building, Dallas, Texas, and N. R. Royall, Jr., Magnolia Building, Dallas, Texas, an interest in and to all of the oil, gas or other minerals in or under, and that may be produced from the following described lands in Upton County, Texas, to-wit:

"An undivided mineral interest equal to two hundred (200) mineral acres in and under Section 16, Certificate No. 1331, Original Grantee C.C.S.D. and R.G.N.G. R.R. Company survey; and

"An undivided mineral interest equal to two hundred (200) mineral acres in and

under Section 8, Certificate No. 914, Original Grantee Mary Smith; and

"An undivided mineral interest equal to two hundred (200) mineral acres under Section 18, Certificate No. 3574, Original Grantee G.C. and S.F.R.R. survey;

"All in Upton County, Texas,

Together with right of ingress and egress at all times for the purpose of mining, drilling and exploring such lands for oil, gas and other minerals, and removing the same therefrom.

"Said lands being now unleased and the interests herein conveyed covers the undivided interest in and to all the minerals in and under said lands. In the event that Grantor's undivided interest in any of the land herein conveyed is insufficient to convey a fractional interest so as to make the interest uniform throughout the tract, then the undivided interest in the other portion of said tract shall be enlarged to give full credit to the mineral acres herein conveyed.

"To Have And To Hold the above described property, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said Grantees herein, and the Grantee's successors, heirs and assigns forever; and the Grantor does hereby bind himself, his heirs, successors, executors and administrators, to warrant and forever defend all and singular the said property unto the said Grantees, their heirs, successors and assigns against every person whomsoever lawfully claiming or to claim the same, or any part thereof.

"Witness my hand this the first day of December, 1948

"W. S. Hewes

W. S. Hewes"

Appellants Sabine Royalty Corporation and Pan American Petroleum Corporation, et al., in separate, but equally able, briefs contend that the employment of the words, "an interest", as used in the granting clause of the above deed and in each of the three other deeds involved in this controversy, renders that which was intended to be conveyed so indefinite and uncertain as to be impossible of ascertainment. They say that since it cannot be determined from the instrument itself, with the degree of certainty required of deeds, exactly what interest was intended to be conveyed, the deed is therefore void and ineffective to convey any interest.

Counsel for appellants Pan American Petroleum Corporation, et al., in their brief, have graphically depicted the contention of the appellants, with respect to each of the four deeds, by extracting key words and disregarding other language, for the purpose of demonstrating that such deeds are void and ineffective by reason of uncertainty. As construed by appellants, the deed set out above would read as follows:

W. S. Hewes conveys
 to
R. H. Venable and N. R. Royall, Jr.,
 an interest in
An undivided 200 mineral acre interest in Section 18, GC & SF RR Company Survey.

Appellees contend that the deeds are unambiguous, and that, when read in their original condition, no doubt exists as to what Hewes was conveying, or what Venable and Royal were paying for, and that the construction placed on the deeds by appellants is a manufactured ambiguity, created by a clever selection and isolation of words, rather than any ambiguity as to the intent of the parties to the deed, as expressed by the instrument itself.

Appellants, as well as the appellees, have cited, in support of their opposing views, the decisions by the Commission of Appeals and the Supreme Court in the respective cases of W. T. Carter & Bro. v. Ewers, 133 Tex. 616, 131 S.W.2d 86, 123 A.L.R. 908, and Dahlberg et al. v. Holden et al., 150 Tex. 179, 238 S.W.2d 699. Appellants contend that these two cases are controlling; that they hold that an attempted grant of "an

interest" out of a described tract of land is void, for uncertainty and indefiniteness; and that these two cases must govern the construction to be given the Hewes deeds by the courts.

It is elementary, and both of the cases cited above recognize the rule, that where a deed is reasonably susceptible of a construction which would identify any definite interest in land, it will be given that construction; or, if such deed admits of two equally susceptible constructions, one of which would make it valid and the other would render it invalid and ineffective, the construction which would make the deed valid must prevail. Curdy v. Stafford, 88 Tex. 120, 30 S.W. 551.

It is unquestionably the law of this State that an instrument which purports to convey "an interest" in a certain designated tract of land, but which fails to define or describe the interest intended to be conveyed, is void for uncertainty. We do not believe, however, that such rule may be applied to the mineral deeds here under investigation.

Turning to an examination of the four mineral deeds involved here, we find the term, "an interest", used in the granting clause of each deed. Standing alone, such indefinite description of the interest in land intended to be conveyed ·would render each of such deeds void for uncertainty, under the holdings of both Carter v. Ewers, and Dahlberg v. Holden, supra. If, however, the indefinite and uncertain term, "an interest", used in the granting clause is defined and made certain by other language contained in the deed, no uncertainty can be said to exist, and such deed will be given the construction that would make it valid.

In the case of Carter v. Ewers, W. D. Ewers and wife executed a deed whereby they attempted to convey to Mollie Pinkard the following described land [133 Tex. 616, 131 S.W.2d 87]:

"An undivided interest in and to a subdivision of 200 acres of a survey in the name of Swiny, situated in the County of Polk, State of Texas."

In the attempt of the Ewers to convey merely "an interest" in land, where the land itself, as noted above, is described in terms that are also indeterminative, it follows that such a deed must be held to be void for uncertainty.

The same situation existed in the Dahlberg case, supra. There, the descriptive paragraph of the deed began with the same language as the granting clause, "an undivided interest in". The descriptive paragraphs in·both the Ewers case and in the Dahlberg case, ·being indeterminate and uncertain, reference could not be had to them for the purpose of supplying the defects in the granting clauses of the deeds involved.

We are of the opinion that the descriptive paragraphs of the four mineral deeds here under consideration do supply the defect in the granting clauses of such deeds.

We quote from the descriptive paragraph of the deed set out earlier in this opinion:

"An undivided mineral interest *equal to two hundred (200) mineral acres* under Section 18, Certificate No. 3574, Original Grantee G.C. and S.F. R.R. survey; All in Upton County, Texas." (Emphasis ours.)

Such description is certain, definitive, and admits of no ambiguity. In the Dahlberg case, the court resorted to the descriptive paragraph of the deed to supply the defect in the granting clause, but could not do so there because such descriptive paragraph merely reiterated that what was being conveyed "was an undefined and undivided interest in a one-third interest," and therefore did not cure the defect in the granting clause of such deed; but, to the contrary, emphasized the defect.

Considering each of the mineral deeds from its four corners, as we believe

we must, and disregarding technicalities, matters of form, grammar, punctuation and arbitrary rules, we believe that the intent of the parties to such deeds is manifest without the necessity of resorting to extrinsic evidence, and that such intent was to convey to the grantees named therein the specific number of mineral acres set out in each of the four deeds.

■ While we are of the opinion that the trial court correctly construed the four deeds without the necessity of resorting to extrinsic evidence to support such construction, we are also of the opinion that the trial court committed no error in considering, if it did, the affidavitis of W. S. Hewes, the grantor in said deeds, to aid the court in its determination of the intent of the parties to such deeds, and in placing the construction that it did upon such deeds.

Points 1 to 4, assigned by appellants Pan American Petroleum Corporation, et al., and the similar contention urged by appellant Sabine Royalty Corporation, are accordingly overruled.

Our holding sustaining the trial court's construction of the four Hewes mineral deeds makes it unnecessary for us to discuss other points raised by the appellants Sabine Royalty Corporation and Pan American Petroleum Corporation, et al.

The appeal of the Fox-Tucker group of appellants was perfected from Motion for New Trial filed by them, and which was overruled by the trial court on August 17, 1959. Involved is the question of whether the trial court correctly construed a certain deed dated November 28, 1925, executed by A. A. Reese and wife, Jennie Reese, to W. B. Tucker and J. O. Fox.

The trial court held that the deed was unambiguous and conveyed, subject to the terms therein stated, and subject to the leasing rights reserved by A. A. Reese, an undivided $\frac{1}{32}$nd mineral fee interest in and under the land described therein, and also conveyed $\frac{1}{4}$th of the royalties in certain oil and gas leases referred to and described

therein, and further held that, upon expiration of said oil and gas leases, the conveyance covered only a $\frac{1}{32}$nd fee mineral interest in said lands, and no more.

Having carefully considered appellants' contentions with respect to the deed in question, we have concluded that the construction placed on such deed by the trial court was correct as a matter of law. Appellants complain that the deed in question was construed by the trial court on pretrial, and that they were thus denied a full and proper hearing upon the merits.

At the pre-trial, which was called pursuant to Rule 166, Texas Rules of Civil Procedure, numerous stipulations were obtained and agreed to by all the parties. No attack was made then, nor is attack made on this appeal, with respect to the matter of notice or the propriety of the pre-trial procedure; but these appellants do attack the authority of the trial court to construe the deed here involved at the pre-trial hearing.

■ There is abundant authority for the proposition that the construction of an unambiguous written instrument is a question of law, for the court to decide. 14–B Tex.Jur. 577, sec. 128; Hester v. Weaver, Tex.Civ.App., 252 S.W.2d 214; Haines v. McLean, 154 Tex. 272, 276 S.W.2d 777.

■ In 1939, the Legislature enacted Article 1731a, Vernon's Annotated Texas Civil Statutes, under which the Supreme Court of Texas was invested with full rule-making power governing practice and procedure in civil actions. The purpose of this Act was to enable the Supreme Court to promulgate rules that would avoid unnecessary delay and great and unnecessary expense to litigants and to the State, in the trial of cases, and unnecessary reversals and new trials upon purely technical procedural grounds, with consequent further delay and expense. Assuming, as we do, that the trial court has authority to dispose of questions of law, it seems to us that it is immaterial at which stage of the judicial process such authority is exercised.

Under Rule 166, Texas Rules of Civil Procedure, the trial court is authorized to consider, in addition to certain enumerated matters, "such other matters as may aid in the disposition of the action." In the absence of the authority of the trial court to rule on questions of law, it would be impossible to simplify the issues, and the pre-trial procedure would be useless. In addition, Rule 175, Texas Rules of Civil Procedure, provides, in cases where there has been no pre-trial as provided by Rule 166, the issues of law arising on the pleadings, all pleas in abatement, and other dilatory pleas remaining undisposed of, shall be determined.

If, on pre-trial of a case, it is determined that there are no issues of fact, and that only questions of law remain to be solved, and these are disposed of at the pre-trial conference, judgment must necessarily follow for one party or the other. The trial court's conclusions of law, made on pre-trial, with respect to the construction to be placed on an unambiguous written instrument, was within the authority of the court under the Texas Rules of Civil Procedure. Until final judgment, it was simply an interlocutory order, subject to being set aside by the court. In this case, final judgment was not entered until after a hearing on the merits, at which time the court reconsidered all of its pre-trial rulings and affirmed them.

Was the deed in question ambiguous, as is contended by the Tucker-Fox appellants, or was it unambiguous? If the deed was unambiguous, as found by the trial court, its construction was for the trial court as a matter of law, and it becomes immaterial whether such deed was construed at the pre-trial or at the subsequent hearing of the case on its merits.

We have carefully examined the deed involved, and are of the opinion that such deed is unambiguous and was correctly construed by the trial court. However, if such deed was ambiguous, then the Tucker-Fox appellants were entitled to prove, if they could, by extraneous facts and surrounding circumstances, the contrary intent of the parties with respect to the nature and extent of the interest intended to be conveyed by such deed.

Since other questions raised by the Tucker-Fox appellants are based on the contention that the above-mentioned deed was ambiguous, and was erroneously and improperly construed by the trial court, such deed (omitting only the description of the lands covered thereby, in four tracts and aggregating some 3,000 acres of land) is set out as follows:

"The State of Texas } Know All Men
 County of Dallas } By These Presents:

"That we, A. A. Reese and wife, Jennie Reese, of Rockwell County, Texas, for and in consideration of the sum of Sixteen Hundred ($1,600.00) Dollars to us paid by W. B. Tucker and J. O. Fox, both of Dallas County, Texas, the receipt of which is hereby acknowledged, and subject to the terms and conditions herein expressed, have granted, sold and conveyed and by these presents do grant, sell and convey unto the said W. B. Tucker and J. O. Fox an undivided one-thirty second (1/32) interest in and to all of the oil, gas and other minerals in and under and that may be produced from the following described tracts of land situated in Upton County, Texas, to-wit:

\* \* \* \* \* \*

"together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said lands for oil, gas and other minerals and removing the same therefrom.

"But it is expressly agreed and understood that if neither oil nor gas shall be produced in paying quantities within five years from this date from any part of any of the lands above described, then in such event all mineral rights and estate hereby conveyed to the said W. B. Tucker and J. O. Fox shall at the end of five years from this date cease and terminate and shall revert to and become the property of the said A. A. Reese

or his heirs or assigns. It is further expressly stipulated and agreed that if oil or gas shall be produced in paying quantities from any of the lands above described or any part thereof, within five years from this date, then if and when at any time subsequent to five years from this date no oil nor gas shall be produced at any time during a continuous period of twelve months from any part of the lands above described, then in such event all the mineral rights and estate hereby conveyed to the said W. B. Tucker and J. O. Fox shall cease and terminate and revert to and become the property of the said A. A. Reese or his heirs, or assigns.

"Parts of the above described lands are now under an oil and gas lease executed by A. A. Reese to Aruther L. Moore, dated October 31, 1925, and recorded in Vol. 20, page 113, of the Deed Records of Upton County, Texas, and aforesaid Section 2, in Block 3, M K & T Ry Company Certificate No. 358, is under an oil and gas lease executed by A. A. Reese and wife, Jennie Reese to J. V. Cline, dated September 19th, 1924 and recorded in Vol 17, page 46, of the oil and gas lease records of Upton County, Texas; and the West half of the Northeast quarter of aforesaid Section 16, Block No 3½ Certificate No. 1331, is under an oil and gas lease executed by A. A. Reese and wife, Jennie Reese, to W. E. Duffy dated November 25, 1925. And it is understood and agreed that this conveyance is made subject to the said lease but covers and includes one fourth ¼ of all of the oil royalty and gas royalty stipulated in said leases to be paid and or delivered to the lessor therein.

"It is expressly agreed and understood by the parties herein that A. A. Reese has reserved the right and he does hereby reserve the right to lease any or all of the unleased land without the signature of grantees herein.

"To Have And To Hold, subject to the above terms and conditions, the above conveyed mineral rights and estate unto the said W. B. Tucker and J. O. Fox and their heirs and assigns forever; and we do hereby bind ourselves, our heirs, executors, and legal representatives to warrant and forever defend all and singular the hereby conveyed mineral rights and estate unto the said W. B. Tucker and J. O. Fox, their heirs and assigns against all persons whomsoever lawfully claiming or to claim the same or any part thereof.

"Concurrently with the execution hereof the said A. A. Reese and wife, Jennie Reese, are executing and delivering to the said W. B. Tucker and J. O. Fox three oil and gas leases on parts of the above described lands. It is, of course, understood and agreed that one-fourth of all oil and gas royalties and one-fourth of all rentals mentioned and stipulated in said three leases shall be deducted and retained by or delivered and paid to the said W. B. Tucker and J. O. Fox, or their heirs and assigns.

"Witness our hands this 28th day of November 1925.

"A. A. Reese
Jennie Reese"

It was stipulated in the trial court that all of the oil and gas leases referred to in the above deed expired by their own terms, insofar as the lands here in controversy are concerned. Therefore, there is no question concerning the royalty payable under the old leases. The question raised here relates to the amount of royalty which appellants are entitled to receive, by virtue of the deed set out above, under leases executed at later times, and which are now in full force and effect.

The law in Texas has long been settled that an instrument may convey two separate estates in the minerals, one of which may be a full mineral interest, and the other a royalty, or other, interest in the minerals. Richardson v. Hart, 143 Tex. 392, 185 S.W.2d 563; Benge v. Scharbauer, 152 Tex. 447, 259 S.W.2d 166; Badger v. King, Tex.Civ.App., 331 S.W.2d 955.

The "separate estates" doctrine announced in Richardson v. Hart, supra, was

applied by the court below to the deed in question. The result was the trial court's conclusion, as a matter of law, that the deed granted an undivided ½₂nd mineral interest in the lands covered thereby, subject to certain leasing rights, and a ¼th interest in the oil royalty and gas royalty under certain described oil and gas leases, which have expired.

It is clear that the granting clause of the subject deed conveyed a ½₂nd interest in the minerals in place on the lands described in said deed, and such granting clause, in the absence of any stipulation to the contrary, carried with it a corresponding interest in the royalty. The deed, however, contained a stipulation with respect to certain designated oil and gas leases covering various portions (but not all) of the lands specifically described in the deed, and with respect to such leases conveyed a second estate in the lands covered by the respective oil and gas leases, amounting to ¼th of all the oil royalty and gas royalty stipulated in said leases to be paid and/or delivered to the lessor therein.

 We are of the opinion that, where a specified, undivided interest in the minerals in place is conveyed by the granting clause, a corresponding interest in the royalty passes to the grantee in such deed, even without mention, as an incident to the ownership of the minerals. If the parties intend that either a larger or a smaller royalty interest than that corresponding to the mineral interest conveyed should pass to the grantee, such intention must be clearly and unequivocably stated in such deed.

Assuming that the oil and gas leases referred to in the subject deed covered less than the whole of the lands affected by the mineral grant, and that the usual and customary royalty of ⅛th was reserved in each of the specified leases, as well as in subsequent leases on said land, the following interests passed to the grantees under said deed:

(1) An undivided ½₂nd part of all the oil and gas in place under all the lands covered by such deed, together with a corresponding royalty in the unleased lands amounting to ½₂nd of ⅛th, or ½₅₆th, of all the oil and gas that might be produced under subsequent leases covering the unleased portions of said land; and

(2) A separate royalty estate, being ¼th of all the oil royalty and gas royalty stipulated to be paid under the terms of certain designated leases referred to and described in the mineral deed.

The separate royalty estate created by this deed is limited to the royalty stipulated to be paid under certain specified existing leases. This was not royalty passing to the grantee as an incident of the grantee's ownership of an interest in the minerals in place, but was a separate royalty which provided for the payment of a royalty interest eight times greater than such grantee would have been entitled to receive under such leases merely as the owner of an undivided ½₂nd interest in the minerals in the lands covered by the specified leases.

We construe the royalty clause of such deed as a conveyance of ¼th of the royalty "stipulated in said leases", but only for the life of the respective leases. The leases having expired, and the deed containing no language which would clearly show that the parties intended to convey a separate royalty interest beyond the life of the leases specified, such royalty terminated when the several leases expired, and there remained only the corresponding royalty interest appellants were entitled to receive by virtue of their ownership of a specific interest in the oil, gas, and other minerals in place.

Among the cases most strongly relied upon by appellants are the cases of Watkins v. Slaughter, 144 Tex. 179, 189 S.W.2d 699; Miller v. Speed, Tex.Civ.App., 259 S.W.2d 235 (no writ history); and Garrett v. Dils Company, 157 Tex. 92, 299 S.W.2d 904. Comparison of the instruments involved in each of the cited cases with the deed in the case before us, distinguishes these cases from the facts of this case. Other cases cited by appellants are likewise

distinguishable, and have no application in the construction of an instrument such as the deed involved here. The "separate estates" doctrine, announced in Richardson v. Hart (supra), and consistently followed by the courts of this State since that time, is applicable to the deed in question, and we believe such doctrine controls the construction of this deed.

We overrule appellants' points by which the trial court's construction of the subject deed is attacked. Our disposition of these points is decisive of this case; therefore, other points raised by appellants need not be discussed.

The judgment of the trial court, in its entirety, is accordingly affirmed.