**Tom J. MOORE, Appellant,**

**v.**

**Charles Lee ROTELLO, et ux, et al, Appellees.**

**No. B14–85–463–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 2, 1986.

Rehearing Denied Oct. 30, 1986.

Bill Payne, Lawrence, Thornton, Payne, Watson & Kling, Bryan, for appellant.

J. Mark Breeding, Sears & Burns, Houston, for appellees.

Before PAUL PRESSLER, SEARS and CANNON, JJ.

## OPINION

CANNON, Justice.

This is an appeal from a judgment rendered on a jury verdict awarding both actual and punitive damages for trespass upon two tracts of land in Brazos County. In twenty-three points of error the appellant challenges the lower court's rulings on charges to the jury and an adverse ruling on a trial amendment. These challenges are not persuasive and we affirm the judgment of the trial court.

This case has been in litigation since 1971 and has been before district courts, appellate courts and the Supreme Court. The subject of the dispute is an abandoned railroad right-of-way.

In 1901 the Rotellos' (appellees) remote predecessor in title conveyed an easement to the International and Great Northern Railway Company (I.G. Northern). The company constructed an embankment, laid its track and placed gravel under the ties for support. In 1965 Missouri Pacific Railroad Company, I.G. Northern's successor, abandoned the easement and removed the track, then sold the gravel, ties and bridges, which remained in place, to Cole Construction Company. Cole in turn sold two miles of gravel, one thousand ties and three bridges to Tom Moore (appellant). Moore removed some of the gravel but left the remainder so the right-of-way could be used as a road between his properties. Moore also attempted to purchase the right-of-way from Missouri Pacific; however, there was some question as to legal title, and the sale was not finalized.

The embankment bisected two tracts of land, the Palasota and Bosse tracts, which were purchased by Tom and Lelia Rotello in 1971. The Rotellos later conveyed the Palasota tract to their son Charles and his wife Sandra. Charles Rotello made a cut in the embankment to facilitate crossing between the two properties, encircled his tract with an electrified fence and leased cattle grazing rights. The fence interfered with Moore's removal of the gravel, as well as his use of the embankment as a road, so he sought injunctive relief against Charles and Sandra Rotello. On December 21, 1971, the district court granted a temporary restraining order against the Rotellos. Prior to the hearing on the temporary injunction set for December 30, 1971, Moore entered upon the Palasota tract, dismantled the fence and removed gravel. He also entered upon the Bosse tract (owned by Tom and Lelia Rotello and not subject to the temporary restraining order) and removed additional gravel. At the hearing on December 30th the district court granted Moore a temporary injunction. The Rotellos appealed to the First Court of Appeals. The First Court of Appeals issued a temporary restraining order and then a temporary injunction against Moore and later dissolved the temporary injunction against the Rotellos.

Meanwhile, the Rotellos had counterclaimed against Moore for actual and punitive damages, and the case proceeded to trial in April 1972. That trial ended in a mistrial. Several months later Tom and Lelia Rotello sued Moore for malicious trespass on the Bosse land. A motion to consolidate the two cases was denied. The Moore-Rotello case was retried in September 1972; however, an incomplete jury verdict resulted and no action was taken by the court until July 18, 1980, at which time the presiding judge ordered another mistrial. Both cases were dismissed the following year for want of prosecution, but this dismissal order was reversed by the Beaumont court of appeals. The Supreme Court refused writ with the notation "no reversible error."

The cases were then consolidated and tried in 1984. The trial court granted defendants Charles and Sandra Rotello's Motion for Summary Judgment, finding that Moore had no legal right to enter upon their land as a matter of law. The court then realigned the parties, making all of the Rotellos plaintiffs and Moore defendant.

■ In point of error twenty-three, the appellant argues that the trial court erred in instructing the jury that legal title to the abandoned railroad right-of-way was conveyed to the Rotellos. The trial court found in his summary judgment order that Moore had no legal right to enter upon appellees' land as a matter of law, thereby finding that the right-of-way belonged to the Rotellos. This finding is in accord with a rule of law that has developed to deal with separate ownership of long narrow strips of land, particularly easements, distinct from the adjoining land. When an instrument conveys land definitely described in the instrument and then excepts from the conveyance a road, railroad right-of-way or canal right-of-way occupying an easement on, over or across the land con-

veyed, the instrument conveys the fee to the entire tract, subject to such right-of-way, unless the deed clearly indicates that the grantor intended to reserve the strip. *Lewis v. East Texas Finance Co.*, 136 Tex. 149, 146 S.W.2d 977, 980 (1941); *Cantley v. Gulf Production Co.*, 135 Tex. 339, 143 S.W.2d 912, 915 (1940). The fact that the railroad abandoned the right-of-way six years prior to the Rotellos' purchase of the two tracts does not affect the operation of the rule. *Cantley*, 143 S.W.2d at 916 (citing *Amerman v. Missouri, K. & T. Ry.*, 182 S.W. 54 (Tex.Civ.App.—Galveston 1915, writ ref'd n.r.e.)).

▮ The pertinent section of the deed conveying the Palasota tract reads as follows:

> THENCE N 78 degrees W, and up Big Creek, 151.0 varas to the PLACE OF BEGINNING, containing 57.17 acres. SAVE AND EXCEPT 2.35 acres for the I. & G.N.R.R. Right of Way, leaving 54.82 acres, as surveyed by Evans Moody, Registered Public Surveyor Number 435, January 8, 1971.

The "save and except" language is not considered an express reservation. *Haines v. McLean*, 154 Tex. 272, 276 S.W.2d 777, 782 (1955); *Lewis*, 146 S.W.2d at 981; *Stroud v. Hunt Oil Co.*, 147 S.W.2d 564, 569 (Tex.Civ.App.—Eastland 1941, no writ). Rather, such words "can have no other effect on this lease than to say that the grant is burdened with the road easement, and that the area in such road easement is not taken into consideration in computing or stating the number of acres." *Lewis*, 146 S.W.2d at 981. We note that the Bosse tract deed contains no such language of exception or reservation concerning the railroad right-of-way.

Moore also argues in this point that the Rotellos thus paid for 54 acres only and not for the additional 2.35 acres encompassed in the right-of-way. However, the language quoted above from the *Lewis* case counters this argument. Legal title was conveyed to the Rotellos. The trial court's instruction was correct; point of error twenty-three is overruled.

In points of error twenty through twenty-two, Moore attacks the trial court's in-

struction that the gravel was a part of the realty as a matter of law and argues that it remained personalty. To support this argument he cites a 1941 Supreme Court case which stated that material in railroad tracks is regarded as personal property, does not become a part of the underlying real estate and may be removed by the railroad company. *Texas & N.O.R. v. Schoenfeld*, 136 Tex. 173, 146 S.W.2d 724, 727 (1941). The rationale is that the parts being merely accessory to the railroad's business, they were put on the land for this purpose and not as accessories to the land itself. *Schoenfeld*, citing *St. Louis, K. & S.W.R. v. Nyce*, 61 Kan. 394, 59 P. 1040, 1042 (1900); *see also* 36A C.J.S. *Fixtures* § 11 (1961). In *Schoenfeld*, the railroad company had removed "the ties, etc., out of which the spur track had been built ..." *Id.* at 725. Also, the case on which *Schoenfeld* based its decision was a suit to recover the value of "railroad iron" placed on plaintiff's land. *Preston v. Sabine & E.T.Ry.*, 70 Tex. 375, 7 S.W. 825 (1888).

▮ Clearly, the railroad has the right to remove or sell off the ties and track iron. However, the issue of the gravel is not so clear. Over a sixty-five year period, the gravel was ground into and intermingled with the soil, and there is testimony to that effect from both a railroad representative and a civil engineer/surveyor, Martin L. Reilly, Jr. Though Moore asserts that Mr. Reilly "did coring all along the embankment and was able to state *specifically* where the gravel ended at each place where coring was done," a closer reading of Mr. Reilly's testimony suggests he meant that the coring determined the point at which there was no longer any gravel mixed in with the dirt. In contrast to the ties and track material, the gravel has become part of the realty, and the realty has been established as belonging to the Rotellos. Again, the trial court's instruction was correct, and points of error twenty through twenty-two are overruled.

Moore's points of error ten through fifteen concern his entry upon the Palasota and Bosse tracts to remove the gravel. The court below refused to give the jury a good faith instruction and, further, in-

structed the jury that his entry was unlawful. Appellant maintains that those instructions were error. In addition, Moore disputes the legal and factual sufficiency of the evidence to support the submission of Special Issues Nos. 3 and 4. These issues asked if the entry and removal of the gravel from the two tracts were malicious. We disagree with these contentions.

■ A finding that a trespass was either malicious or willfully done is essential to a recovery of exemplary or punitive damages. *Scurlock Oil Co. v. Joffrion,* 390 S.W.2d 526, 533 (Tex.Civ.App.—Tyler 1965, no writ). As a general rule, such damages may not be recovered where it appears that the defendant acted in good faith or without wrongful intent or in the good faith belief that he was exercising his right. *Id.* at 532. Moore requested an instruction to that effect.

Under the rules of civil procedure, the trial court has considerable discretion in deciding what instructions are necessary and proper when submitting issues to the jury. Absent the showing of a denial of a party's rights which was reasonably calculated to cause and probably did cause rendition of an improper judgment, no abuse of discretion on the part of the trial court is shown. Tex.R.Civ.P. 277; *Hamblet v. Coveney,* 714 S.W.2d 126, 129 (Tex.App.— Houston [1st Dist.] 1986, no writ).

Moore argues that his good faith was evidenced by his obtaining a temporary restraining order before retrieving the gravel. However, it is the circumstances under which he obtained the order and exercised it that raise the malice issue. Moore's own testimony betrays him. During the trial Moore admitted that he had known the railroad could not convey the 2.35 acre right-of-way to him because "we found out they didn't own it." He knew the Rotellos had bought the adjoining land and also knew through his attorney that there was a question about the title to the right-of-way. Yet, in his petition for the restraining order, Moore swore that Charles and Sandra Rotello did not own the 2.35 acres and that the railroad retained title to this acreage. Even more damaging is his testimony that while he entered upon the Palasota tract

under a temporary restraining order enjoining Charles and Sandra Rotello from interfering with his removal of the gravel, he then proceeded to remove gravel from the Bosse tract, with the knowledge that it was owned by Tom and Lelia Rotello.

■ Considering the facts and circumstances of the temporary restraining order and Moore's own testimony concerning his entry on the land, we hold that the trial court did not err in refusing to submit the good faith instruction as this did not result in an improper judgment.

■ Concerning Moore's argument that the court erred in instructing the jury that his entry was unlawful, we again point to the manipulation of the temporary restraining order, as well as to the fact that the gravel belonged to the Rotello families, and find that this instruction was not in error.

■ Finally, as the above discussion of Moore's good faith should make clear, his no evidence and insufficient evidence points of error regarding the malice issues cannot stand. We conclude that the evidence supporting the jury's findings is not so weak nor the evidence to the contrary so overwhelming as to merit reversal. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). Therefore, we overrule points of error ten through fifteen.

■ In points of error sixteen through nineteen, Moore claims error in the submission of the exemplary damages issues. He first argues that the trial court erred in submitting Special Issues Nos. 5 and 6, which asked whether the Rotellos were entitled to exemplary damages and attorney's fees, because such cannot be recovered where damages sought flow from the wrongful issuance of an injunction. However, Moore's argument ignores the fact that this case involves injury to real property, which permits recovery of exemplary damages upon a finding of malice. *Scurlock Oil Co.,* 390 S.W.2d at 532.

Moore then contends that the court erred in listing attorney's fees as a separate element in Special Issues Nos. 5 and 6 because such fees are an element of the recovery of exemplary damages and should not be separately emphasized. In those special issues the jury was instructed that

exemplary damages "may also include compensation for reasonable attorney's fees, inconvenience and other losses too remote to be considered under actual damages." The court then requested an answer for all punitive or exemplary damages excluding attorney's fees, followed by a request for an answer for all attorney's fees divided among the court proceedings to date, including court of appeals if appeal is perfected and the supreme court should an application for writ of error be filed.

[9] Attorney's fees are an element of exemplary damages, *Planet Plows, Inc. v. Evans,* 600 S.W.2d 874, 877 (Tex.Civ.App.—Amarillo 1980, no writ), and the trial court so instructed the jury. Moore cites no authority for his point that attorney's fees should not be separately emphasized. Texas Rule of Appellate Procedure 74(f) states that appellant's brief of his argument "shall include: (1) a fair, condensed statement of the facts pertinent to such points, with reference to the pages in the record where the same may be found; and (2) such discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue." Nothing is presented for our review, and points not properly briefed are waived. *Arndt v. National Supply Co.,* 650 S.W.2d 547, 548 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.). Points of error sixteen through nineteen are overruled.

Moore's points of error one through five concern the issue of actual damages. He objects to the submission of Special Issues Nos. 1 and 2, which asked "the reasonable cost on June 5, 1984" to restore the two tracts of land. Moore argues that both issues should have inquired as to the cost at the time of the damage or injury in 1971 rather than on June 5, 1984, the date of trial. Furthermore, he argues that submission of these issues was in error because there was no evidence of damage amounts as of the date of damage or injury. We find this to be harmless error.

 The measure of damages to be awarded for injury to real property depends upon whether the injury is permanent or temporary. *Kraft v. Langford,* 565 S.W.2d 223, 227 (Tex.1978). Permanent injuries are those which are constant and continuous, while temporary injuries are those which are not continuous but are sporadic and contingent upon some irregular force. Another characteristic of a temporary injury is the ability of a court of equity to enjoin the activity causing the injury. *Id.* Clearly, the removal of gravel in this instance is a temporary injury. Therefore, the proper measure of damages is the amount of damages that have accrued during the continuance of the injury covered by the period for which the action is brought or, stated differently, the amount necessary to place the owner of the property in the same position he occupied prior to the injury. *Id.* This very general cost-of-restoration measure gives us little or no guidance in deciding whether to determine the cost at the date of injury or date of trial prices—because the injury occurred in 1971 and the trial took place thirteen years later.

 The general rule is that inquiries as to values or the costs for necessary repairs are usually confined to the time of injury and the locality where it occurred. *Victory Truck Lines, Inc. v. Brooks,* 218 S.W.2d 899, 900 (Tex.Civ.App.—Texarkana 1948, no writ); 28 Tex.Jur. 3rd *Damages* § 62 (1983). However, courts have interpreted this rule in varied ways.

In *B.A. Mortgage Co. v. McCullough,* the plaintiff alleged damages for loss of lateral support and sought the amount it would cost to build a retaining wall to restore his land to its original condition. The Fort Worth court reversed and remanded for a determination of the damages as they existed in 1975 (when suit was filed) because the trial court based its findings of fact regarding the cost to construct the wall in 1975 on a 1978 (time of trial) cost estimate. The appellate court noted that cross examination showed the figure would have been much lower were it based on costs as they existed three years before the suit was filed. 590 S.W.2d 955, 957–58 (Tex.Civ.App.—Fort Worth 1979, no writ).

The Supreme Court in *Trinity & S.Ry. v. Schofield* compensated for the time lag between date of injury and date of trial by allowing the owner of land temporarily damaged to recover "the amount necessary to repair the injury, and put the land in the condition it was at the time immediately preceding the injury, with interest thereon to the time of the trial." 72 Tex. 496, 10 S.W. 575, 576–77 (1889).

In an erosion case the Waco court of appeals stated the measure of damages arising from the temporary injury to land is ordinarily the cost and expense of restoring the land to its former condition, plus any loss or damages occasioned by being deprived of the use of the land, with interest. Under that rule the injured party is entitled to damages caused by the injury up to the time of trial; accordingly, the court held that the defendant's objection to testimony showing the cost at the time of trial of restoring plaintiff's land was properly overruled. *Brazos Electric Power Cooperative, Inc. v. Taylor,* 576 S.W.2d 117, 120 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.).

The primary object of a suit for damages is to compensate the plaintiff for the injury to his realty. *Terminix International, Inc. v. Lucci,* 670 S.W.2d 657, 662 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.); *Frymire Engineering Co. v. Grantham,* 517 S.W.2d 820, 828 (Tex.Civ.App.—Fort Worth 1974), *rev'd and remanded on other grounds,* 524 S.W.2d 680 (Tex.1975). That being our objective and given what appears to be an inconsistent rule in this instance, we must determine the just and equitable result. To hold the Rotellos to 1971 costs to purchase, transport and spread gravel would be unfair. Furthermore, Moore has had possession and use of the gravel for thirteen years. Finally, attempting to hold either side "at fault" for the delays in this case, as they both suggest, is fruitless. Both parties, as well as the judicial process itself, have contributed to the situation.

■ Even if the trial court erred in submitting issues asking the reasonable cost as of the date of trial to restore the Palasota and Bosse tracts, we are convinced that the error is harmless because this did no more than compensate the Rotellos for the injury to their land. *Terminix International, Inc.,* 670 S.W.2d at 662; *Frymire Engineering Co.,* 517 S.W.2d at 828. We note that the Charles Rotellos asked for $40,000 to restore the Palasota tract but were awarded only $1,042, while the Tom Rotellos asked for $69,000 to restore the Bosse tract but were awarded only $22,882. Because Special Issues Nos. 1 and 2 were not clearly incorrect and because, if incorrect, they constituted harmless error, points of error one through four are overruled. Because it was not necessary that the Rotellos offer evidence of 1971 costs to restore their land, the fifth point of error is also overruled.

In point of error six Moore challenges that portion of Special Issue No. 2 which allowed the jury to consider entries and excavations on the Bosse tract back to 1965. He argues that there were no pleadings to support this submission.

■ Rule 274 of the Texas Rules of Civil Procedure provides that "[a]ny complaint as to an instruction, issue, definition or explanatory instruction, on account of any defect, omission, or fault in pleading, shall be deemed waived unless specifically included in the objections." *Texas Employers' Insurance Association v. Neuman,* 379 S.W.2d 295, 296 (Tex.1964); *Widmer v. Stamps,* 663 S.W.2d 875, 880 (Tex. App.—Houston [14th Dist.] 1983, no writ). While Moore did object to an instruction allowing recovery of damages back to 1965, we are unable to find any objection based on lack of pleadings to Special Issue No. 2. Therefore, the complaint is waived, and point of error six is overruled.

In point of error seven Moore again challenges Special Issue No. 2 on the ground that consideration of entries back to 1965 was barred by the two-year statute of limitations. In points of error eight and nine he claims that the trial court erred in refusing to permit him to amend his pleading to include the statute of limitations defense

and also erred in instructing the jury that the Rotellos could recover damages for any entries and excavations back to 1965 (based on an assignment from Marie Bosse to Tom and Lelia Rotello of all causes of action arising from "the entry, trespass over and upon, extracting and removing of gravel, injury to the freehold from any excavation, and damages to any improvement or fixtures" to the Bosse tract).

The general limitations statute is procedural and may be waived if not affirmatively pleaded. *Franco v. Allstate Insurance Co.*, 505 S.W.2d 789, 793 (Tex. 1974); Tex.R.Civ.P. 94. Moore contends that the Rotellos' pleadings did not fairly notify him of their intent to recover for entries prior to the two years preceding the suit; therefore, after the close of evidence and during preparation of the jury charge (when he first was made aware that the Rotellos would request and the trial court would submit issues relating to a period exceeding two years prior to the filing of the suit), he requested that he be allowed to specifically plead the two-year statute of limitations by trial amendment. The request was denied. In order to raise a question on appeal, the record must not only show that the appellant requested relief in the trial court but also that the trial court ruled adversely as to that relief. *Harris v. Thompson Buick, G.M.A.C., Inc.*, 601 S.W.2d 757, 758 (Tex.Civ.App.—Tyler 1980, no writ). This record does not reflect that any such pleading was tendered or any such motion presented or ruled upon. The only reference to a trial amendment is contained in Moore's objections to the charge where he states, "[a]nd further I would refer to the request that we have made to amend our pleading and to specifically plead the two-year statute of limitations which has just been denied by the Court ..." Mere reference to a trial amendment in an objection to a charge is deemed insufficient to raise this point on appeal. Points of error seven and eight are therefore overruled.

Finally, as to point of error nine, given the fact that Moore ultimately failed to plead an affirmative defense of the statute of limitations, the trial court's instruction allowing recovery of damages for entries and excavations back to 1965 was not in error. Point of error nine is overruled.

We affirm the judgment of the trial court.