Doyle D. REAGAN, Appellant,

v.

MARATHON OIL COMPANY,
et al., Appellees.

No. 10–99–152–CV.

Court of Appeals of Texas,
Waco.

June 27, 2001.

Bill Youngkin, Catlin, Bryan, Stacy & Dillard, Bryan, for appellant.

Albert Witcher, Keith C. Cameron, Naman, Howell, Smith & Lee, P.C., Waco, Kenneth P. Dougherty, Dougherty Law Firm, P.C., Tyler, Bryan F. Russ, Jr., Palmos, Russ, McCullough & Russ, L.L.P., Hearne, for appellee.

Before Chief Justice DAVIS, Justices VANCE and GRAY.

## OPINION

DAVIS, Chief Justice.

Doyle Reagan filed a declaratory judgment action against Marathon Oil Company, Brounkowski Oil and Gas Partnership, Ltd., Horace and Evelyn Bumpurs, and James Bumpurs to obtain a determination of the parties' respective rights to the minerals in two narrow tracts of land located under Texas Highway 7 in Robertson County. The parties (with the exception of James Bumpurs) filed competing motions for partial summary judgment. The court granted the defendants' motions and denied Reagan's motion, decreeing that Reagan take nothing by his suit. Several months later, the court signed a separate order granting the defendants their appellate attorney's fees but denying trial attorney's fees. In the attorney's fee order, the court included a Mother Hubbard clause to dispose of any remaining issues and make its judgment final.

Reagan claims in three points that the court erred in granting the defendants' summary judgment motions and denying his own because: (1) the plain language of the deeds at issue demonstrates that he retained ownership of the minerals in question and thus the strip-and-gore doctrine should not apply; (2) the judgment effectively deprives the State of its title to the surface estate of the property in question without the State's joinder or consent;

and (3) Appellees (with the exception of James Bumpurs) judicially admitted that Reagan had reserved ownership of the minerals to himself. Reagan argues in a fourth point that the court abused its discretion by awarding the defendants their appellate attorney's fees but not their trial attorney's fees because "such an award is calculated to sway [him] from appealing the trial court's ruling."

## BACKGROUND

Prior to the conveyances in question, Reagan owned a series of adjoining tracts of land in the Maria de la Concepcion Marquez Eleven Leagues Survey, Abstract No. 25 in Robertson County. An undivided one-half interest in the minerals in the western portion of this acreage had been conveyed to others by Reagan's predecessors in title.[1] In 1949, Reagan conveyed a 14.116 acre tract of land to the State for construction of Highway 7, reserving the oil, gas and sulphur in the property to himself. Reagan conveyed 55.25 acres to Horace Bumpurs and his wife Evelyn in 1957 without reserving any mineral interests. This tract lies on the northern side of Highway 7, and the legal description in the conveyance expressly follows "the north line" of the highway. 47.679 of these acres are involved in the current dispute. These 47.679 acres comprise Unit Tract Nos. 5, 6, and 9 on a well unit plat pre-

1. The present dispute involves 377.774 acres. The surface ownership of this acreage is as follows: the State owns 17.134 acres; Horace & Evelyn Bumpurs own 55.25 acres; Brounkowski Oil & Gas Partnership, Ltd. owns 304.22 acres; and James & Betty Jean Bumpurs own 1.170 acres. The easternmost 57.789 acres are not subject to the undivided ½ interest in minerals conveyed to others by Reagan's predecessors in title. These 57.789 acres encompass all of James & Betty Jean Bumpurs's acreage and portions of the tracts owned by the State, Horace & Evelyn Bumpurs, and Brounkowski Oil. According to a well unit plat prepared for Marathon Oil Company, these 57.789 acres comprise Unit Tract Nos. 3, 4, and 6. The acreage subject to the previously conveyed mineral interest includes Unit Tract Nos. 1, 2, 5, 9, 10, and 11. In this case, the parties seek to resolve the ownership of the oil, gas, and sulphur in and under the 17.134 acres owned by the State. This acreage runs between Unit Tract Nos. 5, 6, and 9 to the north, and Unit Tract Nos. 2, 3, 4, and 10 to the south.

pared for Marathon Oil Company ("Marathon").

The Marathon plat appears as follows:

In 1958, Reagan conveyed to the State a 3.018 acre tract of land along the southern boundary of the previously-conveyed 14.116 acre tract. Reagan again reserved the oil, gas and sulphur in this property to himself. The 14.116 acre tract and the 3.018 acre tract which Reagan conveyed to the State traverse the disputed properties as follows:

Reagan and his wife Frances conveyed a 304.22 acre tract on the southern side of Highway 7 to Emil Kmiec and ·Esidor Brounkowski in 1970, purporting to reserve an undivided one-half mineral interest for life with right of survivorship. Similar to the Bumpurs conveyance, the legal description in the deed to Kmiec and Brounkowski expressly follows concrete highway markers set along the southern boundaries of the tracts Reagan conveyed to the State for Highway 7. Brounkowski Oil and Gas Partnership, Ltd. ("Brounkowski Oil") presently owns this 304.22 acre tract. 139.177 acres from this tract are involved in the present dispute. These 139.177 acres comprise Unit Tract Nos. 1, 2, 3, 10, and 11 on the Marathon plat.

Reagan and his wife Frances conveyed 1.026 acres to James Bumpurs and his wife Betty Jean in 1978. The legal description in this deed, like the conveyance to Horace and Evelyn Bumpurs, expressly follows "the south line" of Highway 7. The Reagans did not reserve any mineral interests in this conveyance. The Marathon plat designates this tract as Unit Tract No. 4.[2]

In 1993, the Brounkowskis, Horace and Evelyn Bumpurs, and James and Betty Jean Bumpurs executed mineral leases in favor of Marathon.[3] In April 1993, Reagan executed a document ratifying the

---

**2.** The Marathon plat describes the tract owned by James and Betty Jean Bumpurs as containing 1.170 acres, while the Reagan Bumpurs deed describes the tract as containing 1.026 acres. Because James and Betty Jean are not participating in this appeal, we will not attempt to resolve this variance.

**3.** The Brounkowskis executed their lease to Marathon in January 1993. Horace and Evelyn Bumpurs executed theirs in March 1993. James and Betty Jean Bumpurs executed theirs in August 1993.

Brounkowski lease. Marathon pooled these tracts with an adjoining tract to form the Brounkowski No. 1 Gas Unit. Marathon drilled a well in this unit which began to produce gas in November 1995.

After Marathon refused to pay Reagan royalties for his claimed interest in the minerals in and under the 17.134 acres he conveyed to the State, Reagan instituted this lawsuit to obtain a declaration of his ownership interest in the minerals located in and under the State's 17.134 acres. Marathon, Brounkowski Oil, Horace and Evelyn Bumpurs, and James Bumpurs all filed counterclaims for declaratory relief asserting that Brounkowski Oil and the Bumpurses own the disputed minerals.

Horace and Evelyn Bumpurs filed a motion for partial summary judgment alleging that Reagan's 1957 conveyance to them constituted a conveyance of the minerals to the center of Highway 7 as a matter of law because Reagan did not reserve any mineral interests to himself in the conveyance. Brounkowski Oil and Marathon filed similar motions alleging that the 1957 conveyance to the Bumpurses and the 1970 conveyance to Kmiec and Brounkowski conveyed the minerals to the center of Highway 7 as a matter of law because Reagan did not reserve any mineral interests in the conveyance to Horace and Evelyn Bumpurs and his attempted reservation in the Kmiec/Brounkowski conveyance is ineffective because of the undivided mineral interests conveyed by his predecessors in title.

Reagan then filed a motion for partial summary judgment alleging that he is entitled to judgment declaring his ownership of the minerals in question as a matter of law because he expressly reserved the minerals in his deeds to the State and the legal descriptions of the tracts conveyed to Horace and Eugene Bumpurs and Kmiec/Brounkowski do not overlap the legal descriptions of the tracts conveyed to the State.

In a January 1999 order, the court granted the motions for partial summary judgment filed by Marathon, Brounkowski Oil, and Horace and Evelyn Bumpurs.[4] The court denied Reagan's motion. The court decreed that Reagan take nothing by his suit and rendered summary judgment in favor of the defendants "on all issues" except attorney's fees and court costs. The court subsequently received evidence from the parties on attorney's fees. The court signed an order in May 1999 denying defendants' trial attorney's fees and granting them appellate attorney's fees. The court denied Reagan's request for attorney's fees and concluded the order with a Mother Hubbard clause.

Although a "Mother Hubbard" clause does not necessarily make a judgment final, we treat such a judgment as final for purposes of appeal if it "actually disposes

---

4. The court rendered a summary judgment in favor of James Bumpurs in addition to the other defendants. However, James did not file a summary judgment motion. Because Reagan does not contend that the court erred in this regard, the issue is not before us. *See Vawter v. Garvey*, 786 S.W.2d 263, 264 (Tex. 1990) (per curiam); *Williams v. Bank One, Tex., N.A.*, 15 S.W.3d 110, 116 (Tex.App.— Waco 1999, no pet.). Although Reagan named James as an appellee, James has not filed an appellee's brief. Instead, Reagan and James have filed what appears to be a Rule 11 agreement with this Court. *See* Tex.R.Civ.P. 11. In this agreement, James agrees not to seek his appellate attorney's fees as awarded by the trial court and to be bound by "the ultimate decision of the appellate court of last resort" with respect to the dispute between Reagan and Horace and Evelyn Bumpurs. Reagan and James also agree that neither "shall be required to make further response in the appellate courts with reference to the issues between them herein." Pursuant to this agreement, we will not further discuss the dispute between Reagan and James.

of every pending claim and party." *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 205 (Tex.2001). The partial summary judgment in this case expressly adjudicates the merits of every party's claim regarding the title to the disputed minerals and expressly disposes of "all issues except the recovery of attorneys' fees and costs of court." The attorney's fee order expressly disposes of every party's attorney's fee claim and then concludes with the Mother Hubbard clause. For these reasons, we conclude that the court rendered a final, appealable judgment.

## STANDARD OF REVIEW

■ When the parties have filed competing motions for summary judgment and some are granted while others are denied, an appellate court may consider the propriety of the denial as well as the granting. *See Commissioners Court v. Agan*, 940 S.W.2d 77, 81 (Tex.1997); *Sarandos v. Blanton*, 25 S.W.3d 811, 814 (Tex.App.—Waco 2000, pet. denied). If the pertinent facts are undisputed, the court can determine the issues presented as a matter of law. *See Sarandos*, 25 S.W.3d at 814. In this situation, the court will either affirm the judgment or reverse and render. *See Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex.1988); *Tobin v. Garcia*, 159 Tex. 58, 64, 316 S.W.2d 396, 400–01 (1958); *Sarandos*, 25 S.W.3d at 814. Because the facts in this case are not disputed, we will examine the summary judgment record to determine whether the facts establish that Reagan or Appellees are entitled to judgment as a matter of law.[5] *See Sarandos*, 25 S.W.3d at 814.

## THE LETTER RULING

■ Reagan contends in his second point that the court's decree effectively deprives the State of its title to the surface estate of the property in question without the State's joinder or consent. He points to a pre-judgment letter from the court advising the parties of its ruling and requesting that the defendants prepare an order reflecting the ruling. However, a pre-judgment letter does not constitute competent evidence of the court's ruling. *See Cherokee Water Co. v. Gregg County Appraisal Dist.*, 801 S.W.2d 872, 878 (Tex. 1990); *Maddox v. Cosper*, 25 S.W.3d 767, 771 n. 5 (Tex.App.—Waco 2000, no pet.). Moreover, the language in the letter of which Reagan complains does not appear in the judgment. Accordingly, we overrule Reagan's second point.

## JUDICIAL ADMISSION

■ Reagan argues in his third point that Appellees judicially admit in their summary judgment motions that he reserved the oil, gas, and sulphur under the disputed acreage in his conveyances to the State. Appellees respond that Reagan's reservation of these minerals is essential to either side's recovery. Otherwise, the State would own the disputed minerals.

Reagan cites *Mendoza v. Fidelity and Guaranty Insurance Underwriters, Inc.* for the proposition that the assertions in Appellees' motions that he reserved these minerals constitute binding judicial admissions. 606 S.W.2d 692, 694 (Tex.1980). However, the Court in *Mendoza* was addressing the issue of when *testimonial* declarations, which are generally considered "quasi-admissions," can be binding on the declarant. *See id.* at 694; *accord Hennigan v. I.P. Petroleum Co.*, 858 S.W.2d 371, 372 (Tex.1993) (per curiam); *Hill v.*

---

5. We may also reverse and remand if resolution of the issues presented rests in disputed facts or if the parties' summary judgment motions rest on different premises. *See Sarandos v. Blanton*, 25 S.W.3d 811, 814 & n. 5 (Tex.App.—Waco 2000, pet. denied).

*Spencer & Son, Inc.*, 973 S.W.2d 772, 776 (Tex.App.—Texarkana 1998, no pet.).

■ "Pleadings do not constitute summary judgment proof." *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979); *accord Morales v. Murphey*, 908 S.W.2d 504, 506 (Tex.App.—San Antonio 1995, writ denied). Nevertheless, a party may obtain a summary judgment on the basis of the allegations in the non-movant's pleadings if the allegations conclusively negate an element of the non-movant's claim or defense. *See Texas Dep't of Corrections v. Herring*, 513 S.W.2d 6, 9 (Tex.1974); *Brooks v. Center for Healthcare Servs.*, 981 S.W.2d 279, 283 (Tex.App.—San Antonio 1998, no pet.); *David Gavin Co. v. Gibson*, 780 S.W.2d 833, 835 (Tex.App.—Houston [14th Dist.] 1989, writ denied); *see also State v. Durham*, 860 S.W.2d 63, 68 (Tex.1993); *Trail Enters. ., Inc. v. City of Houston*, 957 S.W.2d 625, 632 (Tex.App.—Houston [14th Dist.] 1997, pet. denied) (both holding that summary judgment can be based on non-movant's pleadings which establish absence of right of action or insurmountable bar to recovery).

Appellees correctly argue that neither side can prevail in this matter had Reagan not reserved the minerals in question to himself when he conveyed the highway properties to the State. Thus, the statements in their pleadings that he reserved these minerals in his conveyances to the State do not conclusively negate Appellees' claim to the minerals nor do they conclusively establish Reagan's claim. Accordingly, we overrule Reagan's third point.

## THE STRIP–AND–GORE DOCTRINE

Reagan contends in his first point that the record evidence establishes his ownership of the minerals under the disputed 17.134 acre strip as a matter of law. Appellees respond that the court properly decided the matter by applying the strip-and-gore doctrine to the conveyances in question. The parties' dispute centers primarily on whether the strip-and-gore doctrine applies to Reagan's conveyances to Horace and Evelyn Bumpurs (hereinafter, the "Bumpurses") and to Kmiec and Brounkowski.

### PERTINENT LAW

■ Settled case law establishes:
that a conveyance of land bounded on a public highway carries with it the fee to the center of the road as part and parcel of the grant. Such is the legal construction of the grant unless the inference that it was so intended is rebutted by the express terms of the grant.

*State v. Williams*, 161 Tex. 1, 4, 335 S.W.2d 834, 836 (1960) (quoting *Mitchell v. Bass*, 26 Tex. 372, 380 (1862)); *accord Krenek v. Texstar N. Am., Inc.*, 787 S.W.2d 566, 568 (Tex.App.—Corpus Christi 1990, writ denied). A legal description which defines the property conveyed as extending only to the boundary of the highway does not expressly rebut the presumption that the conveyance extends to the center of the highway. *See Williams*, 161 Tex. at 4, 335 S.W.2d at 836; *Krenek*, 787 S.W.2d at 569. Nor do phrases such as "save and except" or "not including the road." *See Haines v. McLean*, 154 Tex. 272, 281, 276 S.W.2d 777, 782 (1955); *Lewis v. East Tex. Fin. Co.*, 136 Tex. 149, 157, 146 S.W.2d 977, 981 (1941); *Moore v. Rotello*, 719 S.W.2d 372, 376 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.).

In *Krenek*, the court noted that this doctrine does not apply if the grantor owns land abutting both sides of the highway. *See Krenek*, 787 S.W.2d at 569 (citing *Rio Bravo Oil Co. v. Weed*, 121 Tex. 427, 443, 50 S.W.2d 1080, 1086–87 (1932); *Couch v. Texas & Pac. Ry. Co.*, 99 Tex. 464, 467, 90

S.W. 860, 860–61 (1906)). However, our research suggests that the Supreme Court has disavowed this supposed exception to the general rule.[6]

This exception appears to find its genesis in the *Couch* decision. In that case, John Couch owned the land on both sides of a railroad right-of-way. He sold forty acres of this land located on the east side of the right-of-way to Norton and McGown. The legal description in this conveyance followed the northern line of the right-of way. Thereafter, the railroad drilled a water well on the northern side of the track in the right-of-way. Couch sued the railroad for conversion of the water obtained from the well. *See Couch,* 99 Tex. at 466–67, 90 S.W. at 860–61.

The Court acknowledged the general rule recited above but then concluded that it did not apply in Couch's case. *Id.* at 467, 90 S.W. at 860–61. The Court stated:

> At the time the deed from Couch to Norton and McGown was made Couch owned the land on both sides of the railroad, and after the sale the entire right of way remained in connection with his land south of the railroad. Under this state of facts there is no ground for a presumption that Couch intended to convey that portion which lay between the line described in the deed and the railroad track.

*Id.* at 467, 90 S.W. at 861.

Twenty-six years later, the Court reviewed *Couch* and explained it as follows:

> It is thus made clear that the presumption was not applied in that case by the distinguished jurist who rendered the opinion for the obvious reason that the grantor owned lands on both sides of

the railroad. His failure to convey to the center of the railroad right of way did not leave a narrow strip of land disconnected from any other tract. Such strip was as much an appurtenant to the grantor's remaining tract as it was to the tract conveyed. It was as valuable to him as a part and parcel of his remaining tract as it was to the grantee. Evidently Judge Brown declined to apply the presumption because of the recited fact that the grantor, at the time of the conveyance, owned land on both sides of the railroad right of way. There was no other reason for his stating such fact except for the purpose of showing that no basis existed for the application of this presumption.

*Weed,* 121 Tex. at 443, 50 S.W.2d at 1086–87. In our opinion, the Court began to disavow the *Couch* exception soon thereafter.

In *Cox v. Campbell,* T.M. Campbell owned property on both sides of the railroad right-of-way. He sold 108 acres along the northern side of the right-of-way to J.R. Castleberry in 1898. He sold fifty acres on the southern side of the right-of-way to G.B. Turner in 1904. The legal descriptions in both conveyances followed the northern and southern boundaries of the right-of-way rather than extending to the centerline. *See Cox v. Campbell,* 135 Tex. 428, 430, 143 S.W.2d 361, 361–62 (1940).

If the Court had followed *Couch,* it would have concluded that Campbell retained the entire right-of-way property when he made the first conveyance. *See Couch,* 99 Tex. at 467, 90 S.W. at 861. Six

---

6. It appears that *Krenek*'s reliance on this exception had no bearing on the outcome of that case because it impacted only the court's conclusion that the appellants obtained the disputed minerals under the residuary clause of their mother's will rather than through devises of the adjoining acreage. *See Krenek v. Texstar N. Am., Inc.,* 787 S.W.2d 566, 567–68 & n. 1 (Tex.App.—Corpus Christi 1990, writ denied).

years later, his conveyance to Turner would have carried with it the right-of-way property as an appurtenance to the southern tract. Campbell's heirs asked the Court to follow *Couch. See Cox,* 135 Tex. at 437, 143 S.W.2d at 365. The Court acknowledged *Couch* but observed that "[t]he opinion in the Weed case is the latest expression of this Court upon that question, and, unless overruled, should control here." *Id.* The Court concluded that *Weed* controlled and determined that Campbell's first conveyance conveyed the northern half of the right-of-way to Castleberry and his second conveyance transferred the southern half of the right-of-way to Turner.[7] *See Cox,* 135 Tex. at 437–38, 143 S.W.2d at 365–66.

The Court arguably overruled the *Couch* exception by implication in *Cox.* However, we believe that the Court more forcefully did so in *Haines.* In that case, the parties on both sides of four adjoining rights-of-way traced their title to William J. McLean. McLean conveyed the 259 acre tract to A.F. Grabow. A county road and two adjoining railroads crossed this acreage at the time of the McLean Grabow conveyance. Grabow conveyed 127.8 acres to the east of these rights-of-way to D.P.

Yoder. Grabow retained the remainder of the acreage until his death, at which time it passed to Lydia Grabow Haines as part of a voluntary partition with Grabow's other heirs. Haines subsequently conveyed a 100 foot wide strip of land on the western side of the three aforementioned rights-of-way to Scurry County for construction of U.S. Highway 84. The Yoder acreage passed by mesne conveyances to the Boothe plaintiffs, who with the Haines plaintiffs sought to quiet title to the minerals underneath the rights-of-way as against McLean's heirs.[8] *Haines,* 154 Tex. at 274–76, 276 S.W.2d at 778–79.

In trying to determine ownership of the disputed minerals as between the Boothe plaintiffs and the Haines plaintiffs, the Court of Civil Appeals discussed the potential application of *Couch. See Boothe v. McLean,* 267 S.W.2d 158, 168–69 (Tex.Civ. App.—Eastland 1954), *rev'd sub. nom. Haines v. McLean,* 154 Tex. 272, 276 S.W.2d 777 (1955). The Court determined that if *Couch* were applied Grabow would have retained for himself the entirety of the disputed minerals because of his continued ownership of the land to the west of the rights-of-way. *Id.* at 169, 90 S.W. 860.

---

**7.** A sound argument can be made that *Couch* and *Weed* are factually distinct and that the exception found in the former could continue to apply after the latter decision. As previously stated, *Couch* involved a situation in which Couch owned the realty on both sides of the right-of-way and continued to own the realty on the western side of the right-of-way after conveying the realty on the eastern side to Norton and McGowan. *See Couch v. Texas & Pac. Ry. Co.,* 99 Tex. 464, 467, 90 S.W. 860, 861 (1906). *Weed,* on the other hand, concerned a landowner Hebert who with his cotenants partitioned a tract of realty into 8 lots. The partition resulted in four lots lying to the north of a railroad right-of-way and four lots to the south. Subject to this partition, Hebert conveyed the eastern ½ of Lot 6 to Weed. As a result of the partition however, Hebert did not own Lot 3 which lay across the right-of-

way from Lot 6. *See Rio Bravo Oil Co. v. Weed,* 121 Tex. 427, 433–36, 50 S.W.2d 1080, 1081–83 (1932). Because Hebert did not own Lot 3, it could be argued that *Couch* would not apply to his conveyance of Lot 6. Nevertheless, the Supreme Court apparently failed to attach any significance to this distinction when it decided *Cox. See Cox v. Campbell,* 135 Tex. 428, 438, 143 S.W.2d 361, 366 (1940) ("We are unable to distinguish the rule applicable to the facts of this case from the rule announced in the Weed case").

**8.** The opinion of the lower court provides additional details regarding these transactions. *See Boothe v. McLean,* 267 S.W.2d 158, 160–61 (Tex.Civ.App.—Eastland 1954), *rev'd sub. nom. Haines v. McLean,* 154 Tex. 272, 276 S.W.2d 777 (1955).

The Court decided, however, that "since the Couch decision, under a fact situation that cannot be distinguished from those of the present case, our Supreme Court has held that the presumption does apply, despite the fact that the grantor who owned on both sides of a right-of-way conveyed the land on the other side and retained that on the other." *Id.* The Court concluded:

> Our Supreme Court has held that the presumption of an intention to convey to the center of an adjoining easement applies notwithstanding the fact that grantor owned on both sides of the easement and conveyed the land on one side only by a description that called for the grant to stop at the outer edge of the easement.

*Id.; see also Joslin v. State,* 146 S.W.2d 208, 210 (Tex.Civ.App.—Austin 1940, writ ref'd).

The Supreme Court reversed this decision because the lower court concluded that the Grabow Yoder deed effectively conveyed the eastern half of only the 60 foot right-of-way immediately adjoining the 127.8 acres conveyed, rather than the eastern half of the three adjoining rights-of-way. *See Haines,* 154 Tex. at 277, 276 S.W.2d at 780. Nonetheless, the Court fully endorsed the lower court's implied conclusion that *Couch* was no longer valid when the Court construed *Cox* and its progeny to mean that "even where the grantor owns at the time the land on both sides of the easement, his conveyance of a tract adjoining one side carries fee title to the center line." *Id.* at 281, 276 S.W.2d 777, 276 S.W.2d at 782. Thus, it appears that the Court overruled *Couch* by implication, if not in *Cox,* then certainly in *Haines.*

■ The Supreme Court decisions cited above concern rights-of-way created by easements. Nevertheless, the same rule applies to a mineral estate lying beneath a public highway in which the State holds a fee estate in the surface. *See Krenek,* 787 S.W.2d at 567–69; *Melton v. Davis,* 443 S.W.2d 605, 610 (Tex.Civ.App.—Tyler 1969, writ ref'd n.r.e.).

## APPLICATION

Reagan contends that the strip-and-gore doctrine does not apply to his conveyances to the Bumpurses and to Kmiec and Brounkowski because the legal descriptions in these deeds expressly extend only to the boundaries of the highway property. However, the courts have held that this type of legal description does not rebut the presumption that a deed conveying property adjoining a public highway carries with it title to the center of the road. *See Williams,* 161 Tex. at 4, 335 S.W.2d at 836; *Krenek,* 787 S.W.2d at 569; *see also Haines,* 154 Tex. at 281, 276 S.W.2d at 782; *Lewis,* 136 Tex. at 157, 146 S.W.2d at 981; *Moore,* 719 S.W.2d at 376.

■ Reagan goes farther, however, and refers to other portions of the legal descriptions which expressly extend the property conveyed to the center of other roads in the area. Nevertheless, to rebut the aforementioned presumption, a conveyance must contain an "express reservation" of the property in question. *Cox,* 135 Tex. at 435, 143 S.W.2d at 364 (quoting *Weed,* 121 Tex. at 438, 50 S.W.2d at 1084); *accord State v. Fuller,* 407 S.W.2d 215, 218 (Tex.1966) (quoting *Haines,* 154 Tex. at 288, 276 S.W.2d at 786); *Moore,* 719 S.W.2d at 376. Reagan's argument might support an *implied* reservation of the minerals in question. However, a reservation in a deed is "strongly construed against the grantor and in favor of the grantee." *Graham v. Kuzmich,* 876 S.W.2d 446, 449 (Tex.App.—Corpus Christi 1994, no writ) (citing *Reeves v. Towery,* 621 S.W.2d 209, 212 (Tex.Civ.App.—Corpus Christi 1981,

writ ref'd n.r.e.)); *accord Holmstrom v. Lee,* 26 S.W.3d 526, 531 (Tex.App.—Austin 2000, no pet.). Accordingly, we conclude that the deeds in question do not contain express reservations sufficient to rebut the presumption that the conveyances carried with them title to the center of the highway.

For these reasons, we conclude that, when Reagan conveyed the northern tract to the Bumpurses, the conveyance carried with it title to the oil, gas and sulphur under the northern half of the 14.116 acre tract of land Reagan conveyed to the State in 1949. *See Haines,* 154 Tex. at 282–84, 276 S.W.2d at 783–84.[9] Reagan's conveyance of the southern tract to Kmiec and Brounkowski carried with it title to the oil, gas and sulphur under the southern half of the 14.116 acre tract and under the entirety of the 3.018 acre tract he conveyed to the State in 1958, subject to the mineral interest he reserved to himself and his wife in this conveyance. *Id.* at 284–88, 276 S.W.2d at 784–87.

## THE RESERVED MINERAL INTEREST

The conveyance from Reagan and his wife to Kmiec and Brounkowski comprises Unit Tract Nos. 1, 2, 3, 10, and 11 on the Marathon plat. Before this conveyance, Reagan owned an undivided one-half interest in the minerals in Tract Nos. 1, 2, 10, and 11 and the entirety of the minerals in Tract No. 3.[10] The Kmiec/Brounkowski deed contains the following mineral reservation:

Grantors, for the benefit of themselves and the survivor of them, for and during the lifetime of grantors and the survivor of them, do now reserve, save and except from the force and effect hereof and [sic] undivided one-half (½) interest in and to all of the oil, gas and other minerals in, on and under said premises together with all rights appurtenant thereto, including the right to receive bonuses, rentals and royalties as may be paid therefor and thereunder; provided, that all outstanding oil, gas or mineral interests or royalty interests in the premises described above shall be first satisfied out of the oil, gas and mineral interests herein reserved by grantors, so that grantees shall receive by this conveyance an undivided one-half (½) interest in and to the oil, gas and other minerals in, on and under the above described 304.22 acres of land, more or less, and grantees shall likewise receive an undivided one-half (½) interest in all of the delay rentals and royalties hereafter paid and received under such existing lease as it covers the above described 304.22 acres of land, more or less. It is further agreed that grantees

---

9. In *Haines,* the dispute involved the minerals under four adjoining rights-of-way. However, only three of these rights-of-way existed when Grabow conveyed to Yoder the property east of the rights-of-way. Thus, the Court awarded to the Boothe plaintiffs title to the minerals under the eastern half of the three rights-of-way in existence at the time of the conveyance to their predecessor in title Yoder. *See Haines,* 154 Tex. at 282–84, 276 S.W.2d at 783–84. The Court awarded title to the minerals under the western half of these three rights-of-way to the Haines plaintiffs in addition to the minerals beneath the fourth right-of-way on the western side of the other three, which Lydia Grabow Haines had sold to Scurry County after the Grabow Yoder conveyance. *Id.* at 284–88, 276 S.W.2d at 784–87.

10. Actually, Reagan reserved only the oil, gas and sulphur in his conveyances of the highway tracts to the State. Thus, it appears that the State owns the remainder of the minerals in these 17.134 acres, subject to the undivided ½ interest in the minerals conveyed to others by Reagan's predecessors in title. Nonetheless, the present dispute involves gas, which Reagan did reserve in his conveyances to the State.

shall have the exclusive right to make, execute and deliver oil, gas and mineral lease(s) on all of the oil, gas and other minerals in, on and under said premises covered hereby including that portion thereof reserved herein to Sellers for the lifetime of them and the survivor of them and grantees further agree that in the event they shall enter into any oil, gas or other mineral lease(s) on said premises, to be held to account to grantors, and the survivor of them, with respect to grantors reserved mineral interests, for the highest price paid for oil, gas and mineral lease(s) on other property in the vicinity of said premises during the same period of time that grantees may be negotiating such lease(s); this shall apply to bonuses, delay rentals and royalties; this shall be construed as a covenant between the parties hereto and shall never be interepreted as being made for the benefit of any present or prospective lessee of the mineral interests and shall in no way be considered as limiting the exclusive right of grantees to make, execute and deliver such lease(s) on said premises. After the death of the survivor of grantors, all mineral interests so retained to them and the survivor of them shall revert to and become the property of the grantees, their heirs and assigns.

■ Under this reservation, Reagan and his wife reserved a life estate with right of survivorship in whatever mineral interest they reserved. *See Deviney v. NationsBank,* 993 S.W.2d 443, 451 (Tex. App.—Waco 1999, pet. denied). The remainder will revert to the grantees, their heirs, or assigns at the death of the survivor of Reagan or his wife. Currently,

Brounkowski Oil holds this reversionary interest.

■ "There are five essential attributes of a severed mineral estate: (1) the right to develop (the right of ingress and egress), (2) the right to lease (the executive right), (3) the right to receive bonus payments, (4) the right to receive delay rentals, [and] (5) the right to receive royalty payments." *Altman v. Blake,* 712 S.W.2d 117, 118 (Tex.1986); *accord French v. Chevron U.S.A., Inc.,* 896 S.W.2d 795, 797 (Tex.1995); *Bank One, Tex., N.A. v. Alexander,* 910 S.W.2d 530, 532 (Tex. App.—Austin 1995, writ denied). In the Kmiec/Brounkowski conveyance, Reagan and his wife conveyed the executive rights in the minerals (attributes (1) and (2) in the *Altman* listing) to the grantees and reserved to themselves an undivided one-half interest in the remainder of the mineral rights.[11]

However, the Reagans' reservation is further burdened by the undivided one-half interest in the minerals conveyed to others by Reagan's predecessors in title. The reservation in question provides that any outstanding mineral interests:

> shall be first satisfied out of the oil, gas and mineral interests herein reserved by grantors, so that grantees shall receive by this conveyance an undivided one-half (½) interest in and to the oil, gas and minerals in, on and under the above described 304.22 acres of land, more or less.

Thus, as to the minerals in and under Tract Nos. 1, 2, 10, and 11, Reagan conveyed an undivided one-half interest to Kmiec and Brounkowski and reserved nothing for himself. Accordingly, Brounkowski Oil owns an undivided one-half in-

**11.** Although the Court in *Altman* described the right to lease as the executive right, "the right to develop is a correlative right and passes with the executive rights." *French v.* *Chevron U.S.A., Inc.,* 896 S.W.2d 795, 797 n. 1 (Tex.1995). Thus, the right to develop passed to the grantees in the Kmiec/Brownkowski conveyance with the right to lease.

terest in the oil, gas and sulphur in and under the southern half of the 14.116 acre tract conveyed to the State in 1949 and in and under the entirety of the 3 .018 acre tract conveyed to the State in 1958, insofar as those tracts lie within Tract Nos. 2 and 10 on the Marathon plat.[12]

As to the portion of the southern half of the 14.116 acre tract and the entirety of the 3.018 acre tract which lie within Tract No. 3 on the Marathon plat, Reagan and his wife own an undivided one-half nonexecutive interest in the oil, gas, and sulphur for life with a right of survivorship. Brounkowski Oil owns the remainder of the oil, gas, and sulphur in this portion of Tract No. 3.

### SUMMARY

The undisputed facts in the summary judgment record establish as a matter of law that: (1) Horace and Evelyn Bumpurs own the oil, gas, and sulphur located in and under the northern half of the 14.116 acre tract Reagan conveyed to the State in 1949; (2) Brounkowski Oil owns the oil, gas, and sulphur located in and under the southern half of said 14.116 acre tract and in and under the entirety of the 3.018 acre tract Reagan conveyed to the State in 1958, subject to a life estate reserved by Doyle and Frances Reagan; and (3) Doyle and Frances Reagan own a life estate with right of survivorship in a portion of the oil, gas, and sulphur owned by Brounkowski Oil. Accordingly, we sustain Reagan's first point in part and overrule it in part.

### ATTORNEY'S FEES

Reagan argues in his fourth point that the court abused its discretion by awarding the defendants their appellate attorney's fees but not their trial attorney's fees because "such an award is calculated to sway [him] from appealing the trial court's ruling." We agree.

A trial court clearly has broad discretion to award such attorney's fees as it deems reasonable and necessary in a declaratory judgment action. *See Bocquet v. Herring,* 972 S.W.2d 19, 21 (Tex.1998). At the attorney's fee hearing, counsel for Reagan contended that Appellees should be entitled to minimal attorney's fees because their interests coincide.[13] Appellees' counsel responded that their clients have divergent interests. Counsel for the Bumpurses further argued:

> [W]e would ask the court to strongly consider awarding the appellate [attorney's] fees because the only person who is in control of that is Mr. Reagan, and my clients have already had to pay me a lot of money to defend the case, and we think it is just and equitable at a very minimum to award those appellate fees to compensate them for something that Mr. Reagan has the sole discretion to do.

The parties and their attorneys undoubtedly invested significant time and expense in pre-trial preparations and in the various hearings conducted in the trial court. However, the court declined to award Appellees any of their trial attorney's fees. Thus, the court's decision to award Appellees their appellate attorney's fees could serve only to place a financial disincentive before Reagan when deciding whether to take this appeal. *See United Interests, Inc. v. Brewington, Inc.,* 729 S.W.2d 897, 906 (Tex.App.—Houston [14th Dist.] 1987,

12. Tract Nos. 1 and 11 do not adjoin the highway property.

13. Brounkowski Oil has its own counsel, the Bumpurses have their own counsel, and Marathon has its own counsel. Each of these attorneys (in addition to James Bumpurs's counsel) sought attorney's fees.

writ ref'd n.r.e.). Because of this, and particularly in light of the fact that a reversal is required in this cause, we conclude that the court abused its discretion in this regard. Accordingly, we sustain Reagan's fourth point.

### CONCLUSION

We have determined that the undisputed facts in the summary judgment record establish as a matter of law that Reagan and his wife have a life estate with right of survivorship in a portion of the oil, gas, and sulphur located in and under the 14.116 acre tract Reagan conveyed to the State in 1949 and in and under the 3.018 acre tract he conveyed to the State in 1958.

Accordingly, we reverse that portion of the court's judgment which adjudicates the ownership of the disputed minerals and render judgment that: (1) Horace and Evelyn Bumpurs own the oil, gas, and sulphur located in and under the northern half of the aforementioned 14.116 acre tract; (2) Brounkowski Oil owns the oil, gas, and sulphur located in and under the southern half of the aforementioned 14.116 acre tract and in and under the entirety of the aforementioned 3.018 acre tract, subject to a life estate in a portion of said oil, gas, and sulphur owned by Doyle and Frances Reagan; and (3) Doyle and Frances Reagan own an undivided one-half non-executive interest in the oil, gas, and sulphur located in and under the southern half of the aforementioned 14.116 acre tract and in and under the entirety of the aforementioned 3.018 acre tract for life with right of survivorship, save and except for the oil, gas, and sulphur located in and under that portion of said tracts previously conveyed by Reagan's predecessors in title.

We reverse that portion of the judgment awarding attorney's fees to Appellees, sev-

er, and remand that portion of this cause to the trial court for further proceedings consistent with this opinion.