# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00221-CV

**Teri Road Partners, Ltd.; Beinhorn Partners Limited Partnership; Teri Road Housing, Ltd.; Blazer Realty, L.L.C.; Blazer Residential Inc.; and Blazer Land, L.L.C., Appellants**

**v.**

**4800 Freidrich Lane L.L.C., Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT NO. D-1-GN-08-003489, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

4800 Freidrich Lane, L.L.C. ("the Purchaser") sued Teri Road Partners, Ltd.; Beinhorn Partners Limited Partnership; Teri Road Housing, Ltd.; Blazer Realty, L.L.C.; Blazer Residential Inc.; and Blazer Land, L.L.C. (collectively, "Teri Road") for trespass and trespass to try title, and also sought a declaration regarding ownership of a portion of a 2.72-acre tract of land. After a bench trial, the trial court ruled that the Purchaser owned the property, that Teri Road had no license or easement over the property, and that the Purchaser should recover attorneys' fees. On appeal, Teri Road asserts in three issues that: (1) the Purchaser's deed did not convey to the Purchaser the land in dispute, (2) the Purchaser failed to defeat a presumption, arising out of prior possession, that Teri Road owned the disputed land, and (3) the form of the trial court's judgment was improper. We will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2007 the Board of Regents of the University of Texas executed a Special Warranty Deed conveying approximately 8.3 acres of land to the Purchaser. The deed included the following description of the property conveyed: "Being 8.377 acres of land, more or less, out of the Santiago Del Valle Grant, Austin, Travis County, Texas, being more particularly described on the attached Exhibit A incorporated herein by reference." Exhibit A to the deed contained a legal description identifying the property by field notes followed by a metes and bounds description. The field notes described the 8.3-acre tract as consisting of a "2.726 acre tract being all of Lot 2 Block A, Woodway Square Subdivision" and "5.65 acres of land out of the Santiago Del Valle Grant, Abstract No. 24." The metes and bounds description identified the location of the southern border of Lot 2, Block A of the Woodway Square Subdivision (hereafter "Lot 2") by stating the bearings and distances of a series of magnetic nails set between an iron rod marking the southeast corner of the Lot 2 and a magnetic nail marking the southwest corner of Lot 2.

The deed also contained the following provision:

**Reservations from and Exceptions to Conveyance and Warranty**

There is reserved from this conveyance all the oil, gas and other minerals in and under the Property owned by the Grantor, if any, which are expressly reserved to Grantor. This conveyance is further subject to all easements, rights-of-way and prescriptive rights, whether of record or not, all presently recorded matters that affect the Property, and those items listed on the attached Exhibit B.

Exhibit B to the deed, the heading for which is "Permitted Exceptions," is a list identifying the following ten items:

2

1. Plat and Restrictive Covenants, as recorded in Document #20030081, Official Public Records of Travis County, Texas.

2. Restrictive Covenant Regarding Unified Development, as recorded in Document #2003035097, Official Public Records of Travis County, Texas.

3. Title to all the coal, lignite, oil, gas and other minerals in, under and that may be produced from the land together with all rights, privileges and immunities relating thereto.

4. One-sixteenth (1/16th) of all the oil, gas and other minerals, the royalties, bonuses, rentals, and all other rights in connection with the same are excepted herefrom, as set forth in instrument recorded in [the Official Public Records of Travis County; Texas]; subject to 50% conveyance deed recorded in [the Official Public Records of Travis County, Texas].

5. Pipeline easement granted to United Gas Pipeline as recorded in [the Travis County Deed Records].

6. A 5' wide electric and telephone easement granted to the City of Austin as recorded in [the Travis County Deed Records].

7. Notice to Buyers, Lessees, and Occupants as recorded in [the Official Records of Travis County].

8. The following matter(s) disclosed by survey of subject property dated July 12, 2007, updated August 29, 2007, prepared by All Star Surveying, Survey Company Job No. A0700307: inset of metal fence along southerly and easterly lot lines and asphalt parking area along the southerly portion of Lot 2 of the Property.

9. Drainage easement granted to City of Austin as recorded in [the Official Records of Travis County].

10. Restrictive Covenant Regarding Unified Development and Maintenance of Drainage Facilities for Woodway Square Apartment dated April 14, 2003, recorded in [the Official Public Records of Travis County].

Item number 8 on this list refers to a fenced-in parking area with improvements built on approximately 0.653 acres located along and within the southern boundary of Lot 2 (the "Disputed

Property"). The fence and parking area were built by Teri Road in connection with an apartment complex it constructed on Lot 1, Block A, Woodway Square Subdivision, a 10.122-acre tract of land lying directly south of and contiguous with Lot 2 that it had purchased from the University of Texas in 2002.

In its suit, the Purchaser initially alleged causes of action for trespass and nuisance and sought a declaration of the parties' rights to the Disputed Property. The Purchaser alleged that the fence, parking lot, and improvements thereon were built without consent on Lot 2, now owned by the Purchaser, and constituted an unauthorized encroachment onto that property. Teri Road filed a general denial and further responded that it had a right to maintain the fence and parking lot on the Disputed Property by virtue of an easement or license to use the property granted by the University of Texas, the parties' common grantor. Teri Road also alleged that the issues before the court presented a question of *title* to the Disputed Property that could not properly be the subject of a suit for declaratory relief, but had to be brought in a trespass-to-try-title action.[1]  Thereafter, the Purchaser amended its petition to add a trespass-to-try-title action to determine title to Lot 2.

The case was tried to the court, and the focus of the trial was whether the University of Texas had granted Teri Road a license or easement permitting it to construct and maintain the

---

[1]  This Court has previously held that claims regarding the existence of an easement, a nonpossessory right, can properly be brought under the Uniform Declaratory Judgments Act. *See Roberson v. City of Austin*, 157 S.W.3d 130, 137 (Tex. App.—Austin 2005, pet. denied). On the other hand, disputed claims of *title* to real property, unless the sole issue concerning the title is the determination of the proper boundary line between adjoining properties, may only be adjudicated in a trespass-to-try-title action. *See* Tex. Prop. Code § 22.001(a); *Martin v. Amerman*, 133 S.W.3d 262, 267 (Tex. 2004); *State v. BP Am. Prod. Co.*, 290 S.W.3d 345, 360 (Tex. App.—Austin 2009, pet. denied).

improvements that encroached onto Lot 2, which was still owned by the University at the time the improvements were constructed. Teri Road never asserted at trial that it owned the Disputed Property, nor did it allege or argue that the Purchaser did not own the Disputed Property.[2] At trial both parties agreed that they were seeking a declaration as to whether or not Teri Road had a license, easement, or other right to maintain the improvements on Lot 2 despite the fact that Teri Road did not own the property on which the improvements were constructed. At the conclusion of the trial, the court rendered judgment that: (1) the Purchaser owns Lot 2, and (2) Teri Road does not have a license or easement on Lot 2. The court also ordered that the Purchaser recover from Teri Road $80,000 in attorneys' fees and, in addition, conditional attorneys' fees in the event of unsuccessful appeals to this Court and to the Texas Supreme Court. Teri Road perfected this appeal.

## DISCUSSION

In its first issue on appeal, Teri Road asserts for the first time that, as a matter of law, the Purchaser does not own the Disputed Property because the deed from the University of Texas to the Purchaser did not actually convey it to the Purchaser. Teri Road contends that, as a consequence, the Purchaser had no justiciable interest in the Disputed Property and the trial court therefore lacked subject-matter jurisdiction to adjudicate any of the Purchaser's claims. The trial court's judgment recites: "[The Purchaser] owns the real property known as 4800 Freidrich Lane, Austin, Travis County, Texas and more particularly described as Lot 2, Block A, Woodway Square

---

[2] In its brief on appeal, Teri Road concedes that the parking area improvements on the Disputed Property are an encroachment on Lot 2. The issue, therefore, was whether the encroachment was *authorized*.

5

Subdivision, Austin, Travis County, Texas ('Lot 2')." The court also filed findings of fact and conclusions of law, which include the following:

> FOF 1: [The Purchaser] owns the real property known as Freidrich Lane, Austin, Travis County, Texas and more particularly described as Lot 2, Block A, Woodway Square Subdivision, Austin, Travis County, Texas ("Lot 2").

While Teri Road describes its first issue as a challenge to the trial court's subject-matter jurisdiction, which it could bring for the first time on appeal, the complaint effectively challenges the trial court's express finding regarding ownership of the Disputed Property.[3] In a nonjury case, complaints regarding the legal or factual sufficiency of the evidence supporting a finding may be made for the first time on appeal. *See* Tex. R. App. P. 33.1(d).[4]

In the present case, whether the Purchaser owns the Disputed Property turns on whether the deed conveyed the Disputed Property to the Purchaser or, as Teri Road maintains, the Disputed Property was expressly reserved from the conveyance. Both parties agree the deed is unambiguous. An unambiguous deed is one that can be given a definite or certain legal meaning. *Stewart Title Guar. Co. v. Aiello*, 941 S.W.2d 68, 74 (Tex. 1997); *see Columbia Gas Transmission*

---

[3] We express no opinion as to whether a successful challenge on appeal to the trial court's ruling that the Purchaser owned Lot 2 in its entirety would, as Teri Road urges, mean that the trial court did not have subject-matter jurisdiction over any of the Purchaser's claims and that consequently its order should be vacated.

[4] As we explain below, this ruling should have been labeled a conclusion of law rather than a finding of fact. Conclusions of law are always reviewable, and when, as here, the record contains specific findings of fact and conclusions of law as well as a reporter's record, the reviewing court may review the legal conclusions drawn from those facts in order to determine their correctness. *See Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 196 & n.1 (Tex. App.—Austin 1992, no writ).

*Co. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996) ("[A]mbiguity does not arise simply because the parties advance conflicting interpretations of the contract."). The construction of an unambiguous deed presents a question of law. *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991). Although the trial court labeled its ruling regarding ownership a finding of fact, it is more properly identified as a conclusion of law, and we will therefore treat the court's ruling on ownership of Lot 2, including the Disputed Property, as a legal conclusion. *See Seasha Pools, Inc. v. Hardister*, 391 S.W.3d 635, 640 (Tex. App.—Austin 2012, no pet.) (trial court's designation of items as findings of fact or conclusions of law is not controlling on appeal, and appellate court may treat court's ruling as factual finding or legal conclusion regardless of label used).[5] We review conclusions of law de novo to determine whether they are legally correct. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

A deed is subject to the same general rules of interpretation and construction as a contract. *See Luckel*, 819 S.W.3d at 461-62. Our primary duty when construing an unambiguous deed is to ascertain the parties' true intent as expressed within the deed's four corners. *Id.* at 461-63; *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994). We apply the "four corners" rule and look not at isolated terms but consider the instrument as a whole, attempting to harmonize and give effect to all its provisions. *Luckel*, 819 S.W.2d at 462; *Plainsman Trading Co. v. Crews*, 898 S.W.2d 786, 789 (Tex. 1995). A deed must not only be construed as a whole, harmonizing all its parts if possible, but also to confer on the grantee the greatest estate that the terms of the deed will

---

[5] We presume this ruling was characterized as a finding of fact because neither party asserted at trial that the Purchaser did not hold fee title to the entirety of Lot 2, including the Disputed Property.

permit. *Lott v. Lott*, 370 S.W.2d 463, 465 (Tex. 1963); *Thomason v. Badgett*, No. 02-12-00303-CV, 2013 WL 3488254, at *3 (Tex. App.—Fort Worth July 11, 2013, pet. denied) (mem. op.).

Teri Road argues that the deed conveys "no fee or other estate in the parking area improvements." We understand Teri Road to mean that the University of Texas intended to carve the Disputed Property out of the conveyance of Lot 2 and retain ownership of it. In support of this argument, Teri Road points to the second sentence of the two-sentence paragraph in the deed, quoted above, entitled "Reservations from and Exceptions to Conveyance and Warranty":

> There is reserved from this conveyance all the oil, gas and other minerals in and under the Property owned by Grantor, if any, which are expressly reserved to Grantor. *This conveyance is further subject to all easements, rights-of-way and prescriptive rights, whether of record or not, all presently recorded matters that affect the Property, and those items listed on the attached Exhibit B.*

(Emphasis added.) According to Teri Road, the second sentence of the paragraph reflects the University of Texas's intent to *reserve from the conveyance* each of the items listed on Exhibit B. We disagree. As an initial matter, the paragraph is within a section of the deed titled "Reservations from and Exceptions to Conveyance and Warranty." Thus, the paragraph describes not only what the University of Texas intended to reserve from the conveyance but also what it was excepting from its warranty of title. The first sentence in the paragraph is a specific reservation from the conveyance of all oil, gas, and mineral rights in and under the property conveyed. The second sentence, however, does not purport to *reserve* anything further from the conveyance, but merely states that the conveyance is "subject to" certain matters, including those items listed on Exhibit B. It is apparent from reading that list of items that, as the exhibit's heading ("Permitted Exceptions") suggests, they

8

primarily identify the exceptions to warranty referred to in the deed. These include certain easements and restrictive covenants, as well as the encroaching improvements located on the Disputed Property. The fact that the list also includes a reference to the oil, gas, and mineral rights, which the language of the deed itself expressly reserved from the conveyance, does not transform the remaining items on the list into additional reservations from the conveyance. The deed's description of the property conveyed includes the entirety of Lot 2, and nowhere does the deed purport to reserve from the conveyance any portion of the surface thereof.

Teri Road relies on *Fricks v. Hancock*, in which the court of appeals construed a deed that recited:

> This grant and conveyance is expressly made subject to the following:
>
> . . . .
>
> 3.  Title to any portion of the property within the bounds of Bayside Colony, as such subdivision is shown on the map and plat thereof in Volume 1, Page 5, of the Map and Plat Records of Refugio County, Texas.

45 S.W.3d 322, 327-28 (Tex. App.—Corpus Christi 2001, no pet.). There, the court of appeals held that this language expressed the grantor's intent to limit the property granted and exclude from the conveyance any property located within the bounds of the Bayside Colony. *Id.* at 328. Our holding is not inconsistent with *Fricks*. The paragraph of the deed construed by the court in *Fricks* made no reference to exceptions to the warranty but did expressly refer to "title" to a portion of the property. *Id.* at 327. Here, in contrast, there is nothing in the deed or the Exhibit B list that purports to exclude

9

*title* to the Disputed Property. Unlike the *Fricks* deed, item number 8 on Exhibit B in the present case merely states:

> The following matter(s) disclosed by survey of subject property dated July 12, 2007, updated August 29, 2007, prepared by All Star Surveying, Survey Company Job No. A0700307: inset of metal fence along southerly and easterly lot lines and asphalt parking area along the southerly portion of Lot 2 of the Property.

Teri Road argues that this language expresses the grantor's intent to reserve for itself fee-simple title to the Disputed Property. But this description of an encroachment revealed by a survey done in connection with the sale of Lot 2 cannot reasonably be construed as a reservation of part of the tract described in the deed. There is no reference to "title" to any part of Lot 2.

Moreover, the *Fricks* court relied for its holding on *Bass v. Harper*, in which the Texas Supreme Court concluded that language in a deed stating that the "grant is subject to the Mineral Reservation contained in" nine other deeds unambiguously excluded from the grant the mineral rights described and was not simply an exception to warranty of title. 441 S.W.2d 825, 827 (Tex. 1985). The supreme court held that "[i]t is also clear that the grant itself 'is subject to the mineral reservations'" contained in the referenced deeds. *Id.* Unlike the *Bass* deed, none of the items that the conveyance in the present case was "subject to"—the items listed on Exhibit B—are actual reservations except for the mineral rights, which are expressly reserved elsewhere in the deed. There is no reservation language indicating the grantor's intent to exclude the Disputed Property from the conveyance or to retain fee title to the Disputed Property. *See State v. Dunn*, 574 S.W.2d 821, 824 (Tex. Civ. App.—Amarillo 1978, writ ref'd n.r.e.) (as general rule, exceptions are strictly construed against grantor).

10

Our holding is consistent with cases interpreting the effect of a deed that excepts from a conveyance a right of way, road, or easement. In *Lewis v. East Texas Finance Co.*, the Texas Supreme Court considered the effect of such exceptions to conveyances and held:

> An instrument of conveyance which conveys land definitely described in such instrument, and then excepts from such conveyance a road, railroad right of way, canal right of way, etc., as such, occupying a mere easement on, over, or across the land conveyed, conveys the fee to the entire tract, and the exception only operates to render the conveyance or grant subject to the easement.

146 S.W.2d 977, 980 (Tex. 1941) (citations omitted); *see also Moore v. Rotello*, 719 S.W.2d 372, 375-76 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). Similarly, an exception that merely refers to an encroachment on the property, as opposed to specifically reserving the conveyance of title to the property underlying the encroachment, does no more than say that the property conveyed is burdened by the encroachment. Just as the Purchaser here obtained fee simple title to the land under the pipeline easement (item number 5 on Exhibit B) and the drainage easement (item number 9 on Exhibit B), it also obtained fee simple title to the land under the encroachment.

For the foregoing reasons, we conclude that the conveyance from the University of Texas to the Purchaser included the Disputed Property; the trial court's ruling was therefore not erroneous. We overrule Teri Road's first appellate issue.

In its second appellate issue, Teri Road claims that it was entitled to a presumption of title arising out of its "prior possession" of the Disputed Property. Teri Road also correctly states in its brief, however, that a deed unambiguously granting title to the Disputed Property would "surely overcome a presumption of title." *See Reiter v. Coastal States Gas Producing Co.*, 382 SW.2d 243,

11

250 (Tex. 1964) ("Assuming that the plaintiff is relying upon prior possession, proof of title in the defendant unquestionably operates to rebut the inference of ownership arising from plaintiff's possession."). Because we have concluded that the deed conveyed the entirety of Lot 2 to the Purchaser, any presumption that Teri Road has title to the Disputed Property by virtue of its prior possession has been rebutted. We overrule the second appellate issue.

In its third appellate issue, Teri Road raises for the first time complaints about the form of the trial court's judgment, specifically the recitation that the Purchaser "owns" Lot 2. This complaint was not preserved in the trial court by timely request, objection, or motion and may not, therefore, be raised for the first time on appeal. *See* Tex. R. App. P. 33.1 (as prerequisite to presenting complaint for appellate review, record must show that complaint was made to trial court by timely request, objection, or motion). Accordingly, any complaints about the form of the judgment have been waived. In any event, we do not read the trial court's judgment as adjudicating anything other than the issue of disputed ownership as between the Purchaser and Teri Road. We overrule Teri Road's third issue.

## CONCLUSION

Having overruled Teri Road's three appellate issues, we affirm the trial court's judgment.

12

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Affirmed

Filed:   June 4, 2014